OPINION
{¶ 1} Michael Mills appeals from his conviction in the Montgomery County Common Pleas Court of vandalism and violation of a civil protection order after a bench trial. These convictions stem from an incident at the Dayton International Airport on January 27, 2005. Mills was acquitted of similar charges concerning events which occurred on November 14, 2004.
 {¶ 2} Anna Quafisi and Mills were married in January 2002 and were divorced in May 2004. On July 20, 2004, the Miami County Common Pleas Court issued a civil stalking protection order against Mills. The court found that Mills admitted to "acts constituting menacing by stalking and criminal damaging with respect to Ms. Quafisi." Mills was ordered to stay 500 yards away from Quafisi and to not damage her property. On November 13, 2004, Ms. Quafisi went to a bar in Montgomery County called the Casa Blanca Club with two girlfriends. She parked her 1998 Ford Expedition which she owned while married to Mills in front of the bar. While dancing in the bar later that evening, Ms. Quafisi saw her ex-husband Michael Mills. She became upset and asked for assistance from a deputy sheriff with whom she was dancing. Mills was escorted out of the bar and a short time later Ms. Quafisi and her friends discovered her car had been "keyed" on the sides of the vehicle. Ms. Quafisi reported the vandalism to the Sheriff's Department. Officers had no other reports of vandalism in that parking lot. The court acquitted Mills of the vandalism and violation of the stalking civil protection order arising out of the events of November 14, 2004.
 {¶ 3} Ms. Quafisi had for several years, dating back to 1999, gone to New Orleans with her girlfriends to celebrate Mardi Gras. Mills was aware of this annual trip because Ms. Quafisi had made the trip during their relationship, having accompanied her on one occasion. On January 27, 2005 at approximately 5:30 a.m., Ms. Quafisi drove her Ford Expedition to the Dayton International Airport and parked in the long-term parking lot. She returned from New Orleans in the early morning of January 30, 2005 to find her car had been vandalized. She discovered that someone had sliced all four tires on her vehicle including the spare underneath it. She discovered someone had keyed the car and scratched the word "cunt" on the driver's side door and had broken the left rear door vent glass apparently to gain entry to the vehicle. The seats were sliced and the dashboard and stereo were shattered. She also discovered someone had poured sugar in the vehicle's gas tank and had poured a foreign substance in the engine. She immediately called the police and reported the damage. They found no other cars vandalized in the airport parking lot. The car was not driveable and required $5,564.82 to repair.
 {¶ 4} On January 27, 2005, Mills was also present at the Dayton International Airport, as evidenced by a citation he received on that date. At approximately 11:45 a.m., Mills was held up as he attempted to leave the adjacent short-term parking lot because of his inability to locate his parking lot ticket for payment purposes. John Pitts, who worked at the Airport as a manager of the parking services, was called to assist Mills and the cashier fill out the appropriate paperwork. When Mills was unable to produce a driver's license, coupled with Pitts' observation that Mills' car did not have license plates, the Dayton Airport Police were called. Todd Webber, a member of the Airport Police Department, issued Mills a citation for failing to display license plates on his vehicle. Although a parking lot attendant patrols the airport parking lots to check license plates for inventory purposes, no one discovered the damage to the complaining witness' vehicle until after she did.
 FIRST ASSIGNMENT OF ERROR {¶ 5} DEFENDANT-APPELLANT'S CONVICTION FOR VANDALISM WAS BASED ON INSUFFICIENT EVIDENCE AND CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED TO THE COURT.
 {¶ 6} Appellant contends there was no evidence tying him to the damage inflicted on Ms. Quafisi's vehicle. Appellant argues that Ms. Quafisi's car was not vandalized on January 27, 2005, because no one noticed the damage until Ms. Quafisi discovered it on January 30, despite the fact that someone patrols the parking lot daily. Appellant argues that his mere presence in the airport parking lot on January 27, 2005 is not enough to convict him of the vandalism charge. The State argues that there was sufficient evidence to convict Mills and the judgment was not against the manifest weight of the evidence.
 {¶ 7} We agree with the State that there was sufficient evidence presented by the State to convict Mills of the January 27, 2005 vandalism charge and the resulting violation of the civil protection order. The State offered into evidence the civil protection order of July 2004 wherein the court found that Mills had admitted to stalking Ms. Quafisi and causing criminal damage to her property. Mills was present at the Casablanca Club in November 2004 and could not have failed to notice his former spouse's car in front of the bar. Ms. Quafisi was responsible for Mills being asked to leave the bar that evening and shortly thereafter Ms. Quafisi discovered her car had been "keyed." No other vehicles sustained any damage in that parking lot. There was no dispute that Ms. Quafisi's vehicle was again "keyed" between January 27 and January 30, 2005, in the Dayton Airport parking lot. Mills was present in that parking lot sometime before 11:45 a.m. on January 27, 2005. The person who committed the vandalism knew the owner of the vehicle was a woman because he scratched an obscenity for a female on the driver's door of the vehicle. The garage door opener was stolen from the vehicle perhaps to gain entry into the car owner's home on a future occasion. No explanation was provided during the defense case for his presence at the airport on the date in question. John Pitts testified it was not unusual that the damage to Ms. Quafisi's car was not discovered, because the person who patrols the parking lot does so at night and is merely recording license numbers for inventory purposes. (T. 145-146.) Mills had a motive to damage his ex-spouse's vehicle and was present in the airport parking lot shortly after she boarded an aircraft for New Orleans.
 {¶ 8} An appeal challenging the sufficiency of the evidence tests whether the evidence introduced at trial is legally sufficient to support a verdict as a matter of law. State v.Thompkins (1997), 78 Ohio St.3d 380, 386, superceded by constitutional amendment on other grounds as stated in State v.Smith (1997), 80 Ohio St.3d 89. When reviewing the sufficiency of the evidence, an appellate court examines the evidence admitted to determine whether, if believed, it would convince the average mind of the defendant's guilt beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, superceded by constitutional amendment on other grounds as stated in Smith. The relevant inquiry is, whether after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.Id.
 {¶ 9} In accordance with R.C. 2909.05(B)(1), the vandalism statute requires the state to prove beyond a reasonable doubt that:
(1) Defendant knowingly caused harm,
(2) To property owned or possessed by another,
(3) Which is
(A) Used by its owner or possessor in the furtherance of their trade, having a value of $500 or more, or
(B) Necessary for the owner or possessor to engage in their trade, and
(4) The matter was heard in the appropriate venue.
 {¶ 10} A rational trier of fact could have found that the State had proven that Mills committed the vandalism of January 27, 2005, beyond a reasonable doubt.
 {¶ 11} To warrant a reversal from a bench trial verdict under the manifest weight of the evidence claim, it must be determined that the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. Thompkins at 387. Due deference must be accorded the findings of the trial court because the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. State v. Binford, Cuyahoga App. No. 81723, 2003-Ohio-3021. There is no indication the trial court lost its way in finding Mills guilty of vandalism. The Judgment is not against the manifest weight. The first assignment of error is Overruled.
 SECOND ASSIGNMENT OF ERROR {¶ 12} THE TRIAL COURT ERRED IN FAILING TO PERMIT COUNSEL FOR DEFENDANT-APPELLANT TO INTRODUCE EVIDENCE REGARDING PRIOR FALSE ALLEGATIONS MADE BY THE COMPLAINING WITNESS.
 {¶ 13} The Defendant avers in his second assignment of error that the trial court abused its discretion by refusing to permit him, contrary to, Evid.R. 404(B) and 608 (B), to present evidence about false allegations of burglary, receiving stolen property, telephone harassment, and trespass that Ms. Quafisi had previously made against Defendant in the past. The state argues that the trial court did not abuse its discretion in limiting the introduction of this evidence because Ms. Quafisi's credibility was put at issue when the trial court allowed Defendant to question Ms. Quafisi about her prior false testimony, even though Defendant was barred from asking her about prior false accusations.
 {¶ 14} During opening statement, Mills' counsel informed the court that he would present evidence that Ms. Quafisi had from May 2003 to April 2005 "charged" Mills with almost a dozen crimes of which the defendant pled guilty to only two of them. Defense counsel indicated he wanted to show that Ms. Quafisi had a "pattern" of charging his client with crimes without proof. Defense counsel noted that the charges included rape, receiving and concealing stolen property, telephone harassment, trespass, and burglary. The prosecutor objected to defense counsel's opening statement and of his intention to present this evidence in Mills' defense. She noted that the indictment included the allegation that Mills had been convicted of violating a civil protection order and that he was presently under indictment for burglary. The prosecutor admitted the rape allegation of Ms. Quafisi was ignored by the grand jury. (T. 21-24.) The trial court held that the defense could not introduce evidence of other charges made by the complaining witness against the defendant. During cross-examination, counsel asked Ms. Quafisi if she had even taken the oath and lied on the stand. Ms. Quafisi admitted that she lied at a grand jury proceeding investigating Mills for violating a civil protection order. She said she did so at Mills' insistence because "we were trying to work things out." (T. 90, 91.)
 {¶ 15} This assignment of error must be Overruled. Appellant never proffered what his defense witnesses would testify concerning any prior false accusations allegedly made by the victim against the defendant. See Evid.R. 103(A)(2). Secondly, the mere fact that Mills was convicted of only two of the twelve charges does not mean that Ms. Quafisi testified falsely about those accusations. The charges may have been the subject of plea negotiations or the State may simply have been unable to satisfy the burden of proof necessary to provide a conviction in those matters. The burglary charge remains pending and the complaining witness admitted she lied at a grand jury proceeding to help Mills escape indictment. Lastly, any error in the trial court's ruling was harmless because Ms. Quafisi's credibility was not at issue in the vandalism at the airport matter. It was undisputed that Ms. Quafisi left her automobile at the airport in the early morning hours of January 27, 2005, that it was vandalized, and that Mills was present at the airport parking lot later that morning. The second assignment of error is Overruled.
 {¶ 16} The Judgment of the trial court is Affirmed.
Grady, P.J., and Wolff, J., concur.